# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

**BARBARA BAILEY,**

    **Plaintiff,**

**v.**                                    CIV-00-1239-R

**STATE FARM FIRE and**
**CASUALTY COMPANY and STATE**
**FARM GENERAL INSURANCE CO.,**

    **Defendants.**

## O R D E R

On March 22, 2001, Plaintiff filed a motion for class certification. Briefing by the parties thereafter proceeded until the present. The Court heard oral argument on this motion on December 20, 2001. Plaintiff has dramatically altered her definition of the proposed class, while maintaining that she has merely refined the class definition. And notwithstanding the alteration in the class definition, Defendants continue to argue that Plaintiff's class definition requires a host of individualized inquiries and hence that common questions of fact or law do not predominate over individual issues. See F.R.Civ.P. 23(b)(3). Defendants also continue to argue that to determine who are members of the class, the Court will have to conduct a preliminary inquiry into the merits. Actually, Defendants go farther. They assert that "to find out who is in the class the Court must decide who will win."

Plaintiff seeks certification of a class defined as follows:

> State Farm insureds whose claims documents show the need for the involvement of three trades or more who did not receive an allowance for contractor's overhead and profit.

> Supplement to Plaintiff's Motion for Class Certification at p. 4.

The State Farm insureds are, in particular, insureds having homeowners' insurance policies providing for payment of the actual cash value at the time of the loss of the damaged property, and, at the time repair or replacement is actually completed, any additional amount actually and necessarily spent to repair or replace the damaged property, who sustained a covered loss or damage to their property and whose claims therefor were paid by State Farm, see Complaint, apparently for the period from January 1, 1995 to the present.

Plaintiff, as the party seeking class certification herein, has the burden of showing that all of the requirements of Rule 23(a), F.R.Civ.P., have been met. Integra Realty Resources, Inc. v. Fidelity Capital Appreciation Fund (In re Integra Realty Resources, Inc.), 262 F.3d 1089, 1112 (10th Cir. 2001); Reed v. Bowen, 849 F.2d 1307, 1309 (10th Cir. 1988). See J.B. ex rel. Hart v. Valdez, 186 F.3d 1280, 1287-88 (10th Cir. 1999). The four requirements of Rule 23(a) are as follows:

    1) the class is so numerous that joinder of all members if impracticable (numerosity);

    2) there are questions of law or fact common to the class (commonality);

    3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and

4)  the representative parties will fairly and adequately protect the interests of the class (adequate representation).

F.R.Civ.P. 23(a).

In addition, a party seeking class certification must demonstrate that one of the three prerequisites to maintenance of a class action set forth in Rule 23(b), F.R.Civ.P., is satisfied. In this case, Plaintiff alleges that questions or law or fact common to members of the proposed class predominate over any questions affecting only individual members and that a class action is superior to other available methods for fair and efficient adjudication of the controversy (predominance and superiority).  F.R.Civ.P. 23(b)(3).

It appears to the Court that Defendants are no longer contesting the existence of numerosity.  However, in any event, the Court finds that Plaintiff has satisfied her burden of showing the necessary numerosity.  The number of homeowner property loss claims on which Defendants paid Coverage A losses (property damage claims) in Oklahoma from January 1, 1995 to December 31, 2000 is 121,382 claims.  Affidavit of Jennifer Hall, claim section manager with Defendant State Farm Fire and Casualty Company (Exhibit "17" to Plaintiff's Motion for Class Certification) at ¶ 2.  Pursuant to a discovery order of United States Magistrate Judge Bana Roberts, Defendants produced, inter alia, claims documents from 485 randomly selected claims drawn from a period from January 1, 1995 to the date of the Magistrate's Order.  Of those, according to Plaintiff, 53% representing 258 claims indicate the involvement of three or more trades in the repair of the insureds' homes.  Of that

3

number, Defendants paid overhead and profit in only 5.81%[1] of the cases, according to Plaintiff. Thus, 94.19% of these Oklahoma homeowners would fall into Plaintiff's class definition. If the randomly drawn sample of 485 claims by Oklahoma homeowners is representative of the Oklahoma homeowners insured by Defendants who filed claims during the period from January 1995 to December 31, 2000, then the proposed class would number approximately 113,328. Plaintiff, however, states that the number of potential class members, based upon the recently produced documents, will be over 60,500. Plaintiff has adequately established the prerequisite of numerosity. See Rex v. Owens, 585 F.2d 432, 436 (10th Cir. 1978) (plaintiff must "establish by reasonable estimate the number of class members who may be involved.").

"Commonality" requires only a single issue common to the class." J.B. ex rel. Hart v. Valdez, 186 F.3d at 1288. Plaintiff has demonstrated and the Court finds that the following issue is common to all members of the putative class: In instances where repair of an insured's home requires three or more trades, is an insurer required to include an allowance for a general contractor's overhead and profit in a payment for actual cash value and/or replacement cost?

"The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff." DeBoer v. Mellon Mortgage Co., 64 F.3d 1171, 1174 (8th Cir. 1995), cert. denied, 517 U.S. 1156, 116 S.Ct. 1544, 134 L.Ed.2d

---

[1] At oral argument, Plaintiff asserted that Defendants paid overhead and profit as part of actual cash value of the loss on only 3 percent of the claims.

648 (1996). Typicality is related to adequate representation because "[i]f the representatives' claims are not typical of the class, they cannot adequately protect the interests of the absent class members." <u>Spivak v. Petro-Lewis Corp.</u>, 120 F.R.D. 693, 698-99, 509-10 (D. Colo. 1988), <u>citing Kas v. Financial General Bankshares, Inc.</u>, 105 F.R.D. 453, 461 (D.D.C. 1984). If the named plaintiff and the putative class members' claims arise out of a single event or series of occurrences or the same conduct by the defendant or are based upon the same legal or remedial theory, the typicality requirement is usually met. <u>See Johnston v. HBO Film Management, Inc.</u>, 265 F.3d 178, 184 (3rd Cir. 2001). 7A Charles A. Wright, Arthur R. Miller & Mary K. Kane, <u>Federal Practice and Procedure</u>, § 1764 (2d ed. 1986) at 243. The test for typicality is "not demanding" and focuses on the similarity between the named plaintiff's theories of recovery and the theories of those whom they desire to represent. <u>Smith v. Texaco, Inc.</u>, 263 F.3d 394, 406 (5th Cir. 2001). Differing fact situations of class members do not defeat typicality as long as the claims of the class representative and class members are based on the same legal theory, <u>Adamson v. Bowen</u>, 855 F.2d at 676, or involve the same conduct of the defendant, <u>Johnston v. HBO Film Management, Inc.</u>, 265 F.3d at 184. Typicality does not exist if the named plaintiff's circumstances are markedly different from those of class members he or she seeks to represent or the plaintiff's legal theory differs from that on which the class members' claims must necessarily be based. <u>See Johnston v. HBO Management, Inc.</u>, 265 F.3d at 184.

The claims of Barbara Bailey and those of the class members she seeks to represent are based upon the same conduct by Defendant – failure to include a general contractor's

overhead and profit in payments for actual cash value and/or repair and replacement costs on claims by its insured homeowners for property damage. Plaintiff Barbara Bailey's claim is typical of the class she seeks to represent because she received an actual cash value adjustment, repair of her property damage involved three or more trades and she did not receive an allowance for a general contractor's overhead and profit. The representative Plaintiff's claim and those of the members of the putative class are based upon the same legal theories -- breach of contract and fraud. However, Defendants assert that the named Plaintiff's circumstances are markedly different from other members of the class she proposes to represent because she has already recovered an amount in excess of her replacement costs and she did not attempt to use or actually use a general contractor or, conversely, that because of these distinguishing features of Plaintiff Barbara Bailey's circumstances, there are defenses to her claim that differ from those applicable to the class and that that fact destroys typicality, citing Hanon v. Dataproducts Corp., 976 F.2d 497 (9th Cir. 1992) and Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176 (2nd Cir. 1990), cert. denied, 498 U.S. 1025, 111 S.Ct. 675, 112 L.Ed.2d 667 (1991). Defendants argue that Plaintiff Barbara Bailey's claim isn't typical of the claims of the class she seeks to represent because "State Farm paid her more than it cost her to repair the damage to her home" and "it is quite possible that plaintiff received more than what she was owed, even assuming that the cost of repairing the damaged portions was increased 20% to cover hypothetical general contractor overhead and profit." State Farm's Response to Plaintiff Barbara Bailey's Motion to Certify Class at pp. 3-4. Basically, Defendant's

position is that the named Plaintiff may not be able to prove any damages from Defendants' failure to include a general contractor's overhead and profit in any payment made to her. However, whether the named Plaintiff will or will not be successful at trial in proving damages is immaterial because an inquiry into the merits of her claim is inappropriate at this stage.    Ventura v. New York City Health and Hospitals Corp., 125 F.R.D. 595, 600 (S.D.N.Y. 1989); Sanders v. Faraday Laboratories, Inc., 82 F.R.D. 99, 101 (E.D.N.Y. 1979), citing, inter alia, Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 178, 94 S.Ct. 2140, 2153, 40 L.Ed.2d 732, 742 (1974).  Plaintiff need only demonstrate that she "possess[es] the same interest and suffer[s] the same injury" as the proposed class members, Schlesinger v. Reservists Committee to Stop the War, 418 U.S. 208, 216, 94 S.Ct. 2925, 2930, 41 L.Ed.2d 706 (1974), which the Court finds Plaintiff has shown.  Moreover, typicality should be determined with reference to Defendants' actions, not with respect to the particularized defenses they may have against certain class members, Wagner v. Nutrasweet Co., 95 F.3d 527, 534 (7th Cir. 1996), and differences in the defenses to which various plaintiffs' claims are subject is not enough to justify rejection of class certification.  Bittinger v. Tecumseh Products Co., 123 F.3d 877, 884 (6th Cir. 1997).  The cases cited by Defendants, Hanon v. Data Products Corp., 976 F.2d 497, 508-09 (9th Cir. 1992) and Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176, 180 (2d Cir. 1990), cert. denied, 498 U.S. 1025, 111 S.Ct. 675, 112 L.Ed.2d 667 (1991), are distinguishable from the case herein inasmuch as the unique "defense" to which the class representatives therein would be subject, which was likely to become, according to those courts, "a major focus of

the litigation," was the named plaintiff's alleged lack of reliance, a "defense" which is really part of the plaintiff's prima facie case, and goes to the issue of liability, not damages. Moreover, in any event, the Ninth Circuit in Hanon emphasized that "the defense of non-reliance is not a basis for denial of class certification" 976 F.2d at 509, and stated that "[t]he test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct," id. (citation omitted), a test which the Court finds is met herein.

The adequacy of representation requirement "tend[s] to merge" with the commonality and typicality requirements which "serve as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740, 750 n. 13 (1982). The adequacy inquiry under Rule 23(a)(4), F.R.Civ.P., serves to uncover conflicts of interest between the named parties and the class they seek to represent and considers the competency and any conflicts of interest of class counsel. Id. Contrary to Defendants' arguments, Plaintiff Barbara Bailey as a homeowner insured by State Farm whose property damage would require at least three trades and the payments of whose claim by State Farm did not include a general contractor's overhead or profit, is a member of the proposed class and her interest is common or "squarely aligned" with the interests of the absent class members. See generally Monarch

8

Asphalt Sales Co., Inc. v. Wilshire Oil Co. of Texas, 511 F.2d 1073, 1077 (10th Cir. 1975);

Spivek v. Petro-Lewis Corp., 120 F.R.D. 693, 698-99, 509-10 (D. Colo. 1988). Defendants

have not cited and the Court has not identified any conflict of interest between Plaintiff and

the class she seeks to represent.  Plaintiff's conduct heretofore in this case shows that she

will vigorously prosecute the class claims.  See, e.g., In re Texas International Securities

Litigation, 114 F.R.D. 33, 45 (W.D. Okla. 1987) (adequacy inquiry involves two factors, the

existence of conflicts between the representative and the class, and the vigor with which the

representative can be expected to prosecute class claims).  Plaintiff's counsel represent that

they are experienced in this type of litigation and have "ample experience prosecuting class

actions."  Plaintiff's Motion for Certification at p. 22.  Defendants do not challenge counsel's

competency or point to any conflicts of interest of class counsel.  Thus, the Court accepts the

representation of Plaintiff's counsel, who are officers of the Court.  The Court therefore finds

that Plaintiff has established that she will "fairly and adequately protect the interests of the

class."  F.R.Civ.P. 23(a)(4).

It is the issues of predominance and superiority, see F.R.Civ.P. 23(b)(3), to which

most of Defendants' arguments are addressed and which Defendants most vigorously assert

are absent herein.  Defendants assert that whether or not there is an industry standard that

a general contractor (and his overhead and profit) is required whenever property damage

repairs or replacements require "three or more trades," determining whether a policyholder's

damage required three or more trades for repair or replacement is an individualized

determination that must be made for each policyholder to determine whether he or she falls

within the class definition.  Additional questions that will arise, Defendants assert, are 1) What is a trade? 2) Is a tradeperson who, for example, both repairs siding and does painting considered one trade or two? 3) Is a handyman who repairs a roof leak, repairs the drywall caused by the leak and paints the drywall considered one, two or three trades? 4) What standards are to be used in determining whether three trades were "required"?  State Farm's Surreply at p. 4.  Even after those questions are answered, applying the answers to each particular claim would still require an individualized evaluation of each loss, Defendants assert.  Id.  After determining how many trades are "required" to repair/replace property, Defendants assert that timing and the need for coordination of the trades' work would impact whether a general contractor's services were necessary, raising additional individualized questions.  Defendant maintain that Plaintiff's mantra of a "common scheme to deny overhead and profit" does not eradicate these many individual issues, citing Ostrof v. State Farm Mutual Automobile Insurance Co., Civil No. PJM 99-2988 (D. Md. May 21, 2001).  Furthermore, Defendants assert that under its policies like that issued to Plaintiff, until actual repair is completed, Defendants are required to pay only the actual cash value at the time of the loss of the damaged property and that, pursuant to Oklahoma's "broad evidence rule," there is no single measure of actual cash value, citing Rochester American Insurance Co. v. Short, 207 Okla. 669, 252 P.2d 490, 493-94 (Okla. 1953).  Thus, Defendants assert that the "actual cash value" of each policy claimant's property damage or loss will require an individual assessment of that insured's loss and valuation of his or her loss pursuant to the broad evidence rule.  Moreover, Defendants assert in their Supplemental Response to

Plaintiff's Motion to Certify Class that the ultimate determination of Defendants' liability to any particular insured will depend on a determination of whether the insured received an amount of money equal to or less than the total amount the insured was entitled to receive to indemnify him or her for his or her loss. Thus, even if Defendants underpaid for a particular item such as a general contractor's overhead and profit, they may nevertheless have complied with the contract if that underpayment was offset by overpayment for some other item, as they assert was the case with the named Plaintiff. Defendants point out that insureds' policies limit indemnity benefits to the smaller of 1) the limit of liability of the policy; 2) the actual cash value of an item of like construction; or 3) the amount actually and necessarily spent to repair or replace the damaged part of the property. These limiting clauses illustrate the necessity of individual factual inquiries that must be made for each policyholder to determine whether his or her policy allows for additional recovery.

Defendants also argue that the "three trades rule" which Plaintiffs have created in an attempt to avoid the large number of individual issues inherent in class member identification is not an insurance industry standard and they submit evidence to this effect.[2] But they also point out that from a practical standpoint, there is no reasonable way to use the "three trades rule," as Plaintiff's expert's testimony illustrates, and thus the "three trades rule" does not

---

[2] In this regard, Plaintiff has moved to strike the testimony of Defendants' expert witnesses on the ground that neither expert is qualified to give expert testimony regarding certification of a class action and neither expert's testimony meets the tests of relevance and reliability set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and its progeny. It is unnecessary for the Court to rule on Plaintiff's motion to strike because Defendants' expert witnesses' testimony is addressed to a merits issue – the validity of the three-trades rule – which the Court does not consider on this motion for class certification. See, e.g., Adamson v. Bowen, 855 F.2d 668, 676 (10th Cir. 1988).

avoid a host of individual issues. Defendants assert, and submit evidence in support, that it is not even clear from Defendants' records whether Defendants paid a general contractor's overhead and profit or not.

The Court is cognizant that, as Plaintiff puts it, "State Farm . . . places the most complex spin possible on the task" of identifying class members. However, upon careful review of the parties' arguments, authorities and evidence, the Court agrees with Defendants that questions affecting only individual members predominate over questions of law or fact common to the members of the class. F.R.Civ.P. 23(b)(3). This is apparent by reference not only to the host of individual issues that Defendants have identified but from Plaintiff's identification of a <u>single</u> "common question which will determine State Farm's liability to the members of the class: In instances where three trades or more are involved in the repair of an insured's home does State Farm owe the insured an allowance for overhead and profit?"[3] Supplement to Plaintiff's Motion for Class Certification at p. 5. Consideration of the ease with which that issue can be determined versus the difficulty of determining which insureds' repairs involved or required three or more trades, which insureds were paid for a general contractor's overhead and profit and whether Defendants owe each of the insureds any additional money and the number of issues inherent in these latter determinations

---

[3] At oral argument, in addition to the common question of whether the three trades rule creates a presumption that a general contractor's overhead and profit should be paid, Plaintiff argued that two other common questions are the formula for calculating the amount of profit and overhead and documents of State Farm (claims worksheets) allowing calculation of the number of trades and a determination of whether overhead and profit were paid. However, while these are matters or issues that are common to all of the proposed class, they are not disputed and hence do not present common questions. See Amchem Products, Inc. v. Windsor, 521 U.S. 591, 623, 117 S.Ct. 2231, ___, 138 L.Ed.2d 689, 712 (1997) (the focus of the predominance inquiry is "on the legal or factual questions that qualify each class member's case as a genuine controversy. . . .").

persuades the Court that the single common question identified by Plaintiff does not predominate over the questions affecting only individual members.

When questioned at oral argument about the mechanics of how this action would proceed if the class were certified, Plaintiff's counsel explained that a jury would determine whether the need for three or more trades to repair or replace property damage creates a presumption that a general contractor is needed and that a general contractor's overhead and profit should be paid. All members of the class and Defendants would be bound by that determination. If that determination was favorable to the Plaintiff, then for each class member Defendant would have the opportunity to rebut that presumption by showing that a general contractor's services were not necessary to coordinate the timing of the work of three trades, etc., assert individual defenses and/or show that notwithstanding the fact that overhead and profit of a general contractor were not included in the payment for actual cash value and/or repair or replacement cost, the individual class member did not sustain any damages. However, as Defendants correctly point out, if Plaintiff's proposed three trade rule merely creates a presumption of entitlement to general contractor's overhead and profit and, therefore, a presumption of liability, then a host of issues will have to be tried as part of the liability determination for the individual class members, in separate trials. For example, if a class member's property damage requires the involvement of three or more trades to repair or replace (or Defendants' documents show that three or more trades would be necessary to repair or replace the damaged property), Defendant may rebut the presumption that a general contractor's overhead and profit should be paid by showing that a general contractor's

services would not be necessary to coordinate the work of the three different trades; that at the time actual cash value was paid, the homeowner already had bids from two contractors who would perform the work of all three trades; and/or that notwithstanding the fact that no payment was made for a general contractor's overhead and profit, Defendants paid more than the amount that was actually and necessarily spent to repair or replace the damaged property and thus that there was no breach of contract. In other words, Defendants correctly point out that if the three trades rule creates only a presumption of liability or a presumption of breach of contract when general contractor overhead and profit is not paid, as Plaintiff now maintains, then these and other individual issues will have to be tried as part of the liability determination for each class member, or at least for many of them, rather than as part of the damages determination. In that scenario, clearly individual issues will predominate over the single common question identified by Plaintiff -- the validity of the presumption that when three or more different trades are needed to repair or replace damaged property a general contractor's overhead and profit should be paid as part of actual cash value -- and a class action is not superior to other available methods for the fair and efficient adjudication of the controversy.

In accordance with the foregoing, Plaintiff's motion for class certification is DENIED.

**IT IS SO ORDERED** this 2nd day of January, 2002.

**DAVID L. RUSSELL**
**UNITED STATES DISTRICT JUDGE**