IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| BARBARA BAILEY, | ) | |
| | ) | **FILED** |
| Plaintiff, | ) | NOV 0 5 2002 |
| | ) | ROBERT D. DENNIS, CLERK |
| v. | ) CIV-00-1239-R | U.S. DIST. COURT, WESTERN DIST. OF OKLA. |
| | ) | BY_____ DEPUTY |
| STATE FARM FIRE and | ) | |
| CASUALTY COMPANY and STATE | ) | |
| FARM GENERAL INSURANCE CO., | ) | |
| | ) | DOCKETED |
| Defendants. | ) | |

O R D E R

Before the Court is Defendants' motion for summary judgment on Plaintiff's Complaint. In support of their motion and based upon the assertedly undisputed facts, Defendants State Farm and Casualty Company and State Farm General Insurance Company argue as follows: 1) Plaintiff is not entitled to receive additional payment for general contractor's overhead and profit because she has already been paid $364.55 more than her actual out-of-pocket loss plus an additional hypothetical amount of 20 percent for general contractor's overhead and profit, entitling Defendant to summary judgment on Plaintiff's breach of contract claim; 2) Plaintiff's bad faith claim fails as a matter of law because Plaintiff was fully indemnified for her tornado damage claim and State Farm paid Plaintiff more than she spent repairing her damaged property plus a hypothetical 20 percent for general contractor's overhead and profit and, in any event, State Farm's actions in not including a general contractor's overhead and profit were reasonable because of the limited



amount of repairs needed and the lack of need for coordination between the trades; 3) Plaintiff's fraud claim fails as a matter of law because, contrary to Plaintiff's allegation that Defendant withheld information from Plaintiff concerning entitlement to compensation for general contractor's overhead and profit, Plaintiff was informed at least twice in writing and acknowledged that she read that an additional claim for general contractor's overhead and profit could be filed if she used a general contractor; 4) Plaintiff is not entitled to punitive damages as a matter of law because there is no evidence, much less clear and convincing evidence, that State Farm engaged in any oppressive, fraudulent or malicious conduct; and 5) Plaintiff is not entitled to punitive damages under Okla. Stat. tit. 23, § 9.1(C)(2)(c) as a matter of law because the only evidence Plaintiff has of an alleged financial benefit derived by Defendants as a result of the conduct allegedly causing injury to the Plaintiff and other persons or entities is the calculation of J. Robert Hunter of the amount presumed owed to every insured whose repairs required three trades or more, and Hunter's testimony does not meet the *Daubert* standard of reliability. Moreover, with regard to the last argument, Defendants point out that even Plaintiff's expert, O'Malley, upon whom Hunter relies, agrees that the rule upon which Hunter's calculation is based – the three trades rule – is a mere presumption, after which exceptions are applied, but that Hunter treats the presumption as an absolute rule. Defendants assert that Hunter's testimony is more prejudicial than probative because it ignores the "host of individual issues" that have to be evaluated in determining whether State Farm derived any increased financial benefit from the conduct

allegedly causing injury to the Plaintiff, as indicated in the Court's Order denying Plaintiff's motion for class certification. *See* Order of January 2, 2002 at p. 13. Defendants further assert that Hunter's calculation attempts are an end-run around this Court's denial of class certification and around Oklahoma's broad evidence rule. Because Plaintiff has no evidence other than Hunter's unreliable analysis that Defendants have derived any increased financial benefit from the alleged conduct at issue, Plaintiff's claim for recovery under Okla. Stat. tit. 23, § 9.1(C)(2)(c) necessarily fails, Defendants maintain.

Plaintiff in response asserts, based upon what she contends are factual disputes, that it will be for the jury to determine whether State Farm breached its contract with Plaintiff. In this regard, it asserts that it is no defense for State Farm to assert that Plaintiff did not incur general contractor's expenses because State Farm has admitted that a general contractor's overhead and profit are payable even if not actually incurred where the insured acts as his or her own general contractor, as Plaintiff did. She further asserts that State Farm's indemnity argument has merit only if Plaintiff's time and labor have no monetary value, which is not the case. Next, Plaintiff asserts that the jury may infer that State Farm acted in bad faith when it refused to pay Plaintiff for a general contractor's overhead and profit because its refusal was part of a corporate-wide scheme to deny, delay and underpay these claims. Plaintiff contends that the only reason given for denying Plaintiff's overhead and profit claim was that general contractor costs were not incurred but, in light of Defendants' admission that same are payable whether incurred or not and Defendant' failure

to explain why Plaintiff was singled out for different treatment, the absence of a good faith basis for continued refusal to honor Plaintiff's overhead and profit claim may be inferred. Finally, Plaintiff notes that even a "legitimate dispute as to coverage will not act as an impenetrable shield against a valid claim of bad faith" where the insured presents "sufficient evidence reasonably tending to show bad faith" or unreasonable conduct. Plaintiff's Brief at p. 10, *quoting Timberlake Construction Co. v. U.S. Fidelity & Guaranty Co.*, 71 F.3d 335, 343 (10th Cir. 1995). Moreover, Plaintiff asserts that Defendants' continued reliance on language in the "Property Claim Agreement" form is unjustified and inexcusable because the language is buried deep in the multi-page form and is "vague" and "ambiguous."

Responding to Defendants' motion directed to Plaintiff's fraud claim, Plaintiff again states that Defendants cannot rely on the ambiguous clause in the "Property Claim Agreement" regarding a general contractor's overhead and profit which the California Insurance Department found to be wholly inadequate to convey any important information to insureds. Additionally, Plaintiff points to evidence of what she contends is a long-term strategy of misleading its insureds regarding entitlement to general contractor's overhead and profit by removing any objective criteria, such as the three-trade rule, from the determination of when an insured should receive overhead and profit. Plaintiff suggests that Defendants' relationship with their insured, the Plaintiff, was in the nature of a confidential relation and that Defendants' silence, in the face of a duty to tell the whole truth, was fraudulent, citing Okla. Stat. tit. 58, § 15 and Okla. Stat. tit. 76, § 3. Alternatively, she implies that

Defendants' suppression of when insureds are entitled to overhead and profit in the face of disclosure of other information by them is deceit, citing Okla. Stat. tit. 76, § 3.

Addressing the issue of punitive damages, Plaintiff again points to evidence of what she contends is a corporate-wide scheme to wrongfully deprive insureds of allowances for a general contractor's overhead and profit to which they are entitled. She asserts that this scheme was executed by not paying insureds for a general contractor's overhead and profit until such expenses had been actually incurred, a practice many appellate courts condemned, and by later, after 1998, paying same as part of the actual cash value (ACV) but simultaneously removing all objective standards, like the three-trades rule, for determining when overhead and profits payments should be made and, when in doubt, not paying overhead and profit as part of ACV. Indeed, Plaintiff points to evidence that following implementation of this new policy in 1998, a substantially smaller percentage of insureds received overhead and profit payments. This change in policy impacted Plaintiff, she asserts, inasmuch as Plaintiff's worksheets contemplated at least three trades, resulting in State Farm's refusal to include an overhead and profit payment in the ACV. Additionally, Plaintiff points out that Defendants' stated procedures recognize that there is monetary value to an insured's time and that if an insured does general contracting work, the insured should be compensated, but Defendants ignored their own procedures, requiring Plaintiff to either litigate or submit to the unfairness of State Farm's deviation from its own procedures. Based upon this evidence, Plaintiff posits, the Court cannot say that no reasonable juror could find

by clear and convincing evidence that State Farm either recklessly disregarded its duty to deal fairly with its insureds, citing Okla. Stat. tit. 23, § 9.1(B), or intentionally and with malice disregarded its duty to deal fairly and in good faith with its insured, citing Okla. Stat. tit. 23, § 9.1(C)(1). Plaintiff asserts that if the Court has any doubt concerning this, the determination of whether there is a submissible case for punitive damages should be made after the Court hears the evidence at trial. With regard to disgorgement under Okla. Stat. tit. 23, § 9.1(C)(2)(c), Plaintiff states that the calculation of wrongful financial benefit to State Farm based on a random sample of claims files the Court ordered State Farm to produce is legitimate and reliable evidence given that closed-claim file reviews are a generally accepted practice within the insurance industry to determine the financial impact of an insurance company's claims-handling practices and that State Farm has itself utilized such a practice to assess the company-wide impact of practices specifically related to the payment of general contractor's overhead and profit. Hence, she argues, Mr. Hunter's analysis survives the reliability requirements of *Daubert* and its progeny. Mere uncertainty concerning the amount of "increased financial benefit derived" by State Farm due to exceptions to the three-trades rule should not preclude recovery or disgorgement, Plaintiff asserts, citing *Larrance Tank Corporation v. Burrough*, 476 P.2d 346, 353 (Okla. 1970) and *Florafax Intern., Inc. v. GTE Market Resources, Inc.*, 933 P.2d 282, 296 (Okla. 1997).

The following facts are undisputed. State Farm issued Plaintiff a Homeowners Policy, policy no. 36-BH1044-2, the loss settlement provisions of which provide as follows:

6

COVERAGE A - DWELLING

1. A1 - Replacement Cost Loss Settlement - Similar Construction

    a.    We will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the Declarations, the damaged part of the property covered under Section 1 - COVERAGES, COVERAGE A - DWELLING, except for wood fences, subject to the following:

    (1)    until actual repair or replacement is completed, we will pay only actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the Declarations, not to exceed the cost to repair or replace the damaged part of the property;

    (2)    when the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the Declarations, whichever is less;

    (3)    to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed; and

    (4)    we will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, except as provided under Operation OL - Building Ordinance or Law Coverage.

    b.    Wood Fences. We will pay the actual cash value at the time of loss for loss or damage to wood fences, not to exceed the limit of liability shown in the Declarations for COVERAGE A - DWELLING EXTENSION.

                                                      Policy at pp. 11-12.

Plaintiff Barbara Bailey's home was damaged by wind and hail during a tornado on May 3, 1999. On May 17, 1999, Plaintiff submitted a claim to State Farm. On June 4, 1999, Defendant paid Plaintiff $1,833.59 to cover the actual cash value of the damage to her property, specifically for the damage to half of her roof, her fence, some siding and for some painting. On July 21, State Farm apparently recalculated the actual cash value of Plaintiff's damages as $1,943.78, see Exhibit "B" to Defendants' Brief (Exhibit "33" to Plaintiff's Brief) and paid Plaintiff an additional $110.19 on that date. *See* Exhibit "F" to Defendants' Brief. With each of these payments, Plaintiff was given a Property Claim Agreement, in the middle of which the following is stated:

> In addition, if it is necessary to hire a general contractor to coordinate the repairs to your building, you may also be entitled to reasonable and customary general contractor overhead and profit charges.
>
> Property Claim Agreements dated June 4, 1999 and July 21, 1999 (Exhibits "G" & "H" to Defendants' Brief.)

Plaintiff admits that she read the foregoing paragraph when she received the Property Claim Agreements. Deposition of Plaintiff (Exhibit "D" to Defendants' Brief) at p. 101. After receiving copies of additional receipts from Plaintiff after Plaintiff had filed this lawsuit and after Plaintiff's deposition had been taken, on April 9, 2001 State Farm paid Plaintiff an additional $2,157.60 to reimburse Plaintiff for additional expenses for covered repairs to her home. *See* Letter to Plaintiff dated April 9, 2001 (Exhibit "I" to Defendants' Brief) and Check No. 126346984J (Exhibit "J" to Defendants' Brief). On April 23, 2001, Plaintiff was

sent an additional $322.84 to reimburse her for the costs of replacing siding on her chimney. *See* Letter to Plaintiff dated April 23, 2001 (Exhibit "K" to Defendants' Brief) and Check No. 126045396J (Exhibit "L" to Defendants' Brief). In the aggregate, Plaintiff has been paid $4,424.22 by State Farm for the covered repairs to her home. Plaintiff spent a total of $4,121.00 to repair damaged and undamaged portions of her home: $175 for fencing; $2,886 to replace some siding on her chimney and reroof her entire house and $1060 for painting her entire house. *See* Invoices (Exhibit "N" to Defendants' Brief); Deposition of Plaintiff (Exhibit "D" to Defendants' Brief) at p. 67. On July 9, 1999, Plaintiff informed State Farm that two roofers had inspected Plaintiff's roof and said that the entire roof needed to be repaired due to debris under the shingles. On July 20, 1999, Defendant's adjuster inspected the roof with Gerald McWhirter of J & M Roofing. Defendant's adjuster and Mr. McWhirter agreed that the inspection revealed no storm damage to the rear slope of Plaintiff's roof. *See* Claim Activity Log (Exhibit "C" to Defendants' Brief), Adjuster's note dated 7/20. The adjuster informed Plaintiff following the inspection that no additional payments would be made for roof damage (beyond that for the front slope). *See id.* Plaintiff chose to replace the entire roof of her house because she didn't know who to believe, and thought it best to replace the entire roof. *See* Deposition of Plaintiff at pp. 73-74 & 103-04. State Farm paid Plaintiff a total of $1,767.62 as the replacement cost for the damaged portion of her roof. That amount included $717.62 for tearoff; $1020.00 for 15 squares of shingles; and $130.00 for a roof vent. *See* Estimate dated July 21, 1999 (Exhibit "B" to Defendants' Brief) and

9

July 21, 1999 (Exhibit "B" to Defendants' Brief) and Letter dated April 9, 2001 (Exhibit "I" to Defendants' Brief). Plaintiff paid the roofer, J & M Roofing Co., $2,505.56 to repair her entire roof ($2,886 minus $380.44 for T-111 siding for the fireplace chimney). *See* J & M Roofing Co. invoice dated 10/11/99 (Exhibit "N" to Defendants' Brief) and Letter dated April 23, 2001 (Exhibit "K" to Defendants' Brief). Taking out the amount spent by Plaintiff to replace the part of the roof that Defendants maintain was not damaged (the rear slope), Plaintiff spent a total of $3,383.06 to repair the portions of her home that both Plaintiff and Defendants agree was damaged: $1,767.62 for the front slope of the roof; $175 for fencing; $380.44 for T-111 chimney siding; and $1,060 for painting her entire house. *See* invoices (Exhibit "N" to Defendants' Brief) and above-described undisputed facts. Plaintiff did not use and did not pay a general contractor to perform services in connection with the repairs of her damaged property. The "three trades rule" on which Plaintiff relies is a presumption that when a property claim (or the repairs to damaged property covered by property insurance) requires three or more different trades, the services of a general contractor are usually needed to coordinate the repair work, which is subject to exceptions. *See* Deposition of James E. O'Malley, Jr. (Exhibit "R" to Defendants' Brief) at pp. 9-10.

Based upon the undisputed facts, Defendants are entitled to summary judgment on all of Plaintiff's claims.

No genuine issue of material fact exists but that Defendants have paid Plaintiff in excess of ($4,424.22) what Plaintiff paid to repair or replace the damaged portions of her

home and fence plus an amount equal to payment for a general contractor's overhead and profit of 20% of the cost to repair and replace Plaintiff's property and fence ($3,383.06 x .20 = $676.61, for a total of $4,059.67). Thus, Defendants have paid Plaintiff in excess of what Plaintiff was entitled to under the contract of insurance. No breach of contract occurred as a matter of law and Defendants are entitled to summary judgment on Plaintiff's breach of contract claim.

Plaintiff never alleged that Defendants breached the contract by failing to pay Plaintiff what it cost her to repair or replace the rear slope of her roof. *See* Complaint (Exhibit "M" to Defendants' Motion). Yet now Plaintiff apparently contends that Defendants should have paid to have the rear slope of Plaintiff's roof repaired, *see* Deposition of Plaintiff (Exhibit "30" to Plaintiff's Response) at pp. 73-74, 78-79, although she admitted that that is not what her claim herein is about. Deposition of Plaintiff (Exhibit "D" to Defendants' Motion) at p. 90. Even if the Court were to treat Plaintiff's Complaint as amended by the evidence Plaintiff has submitted in response to Defendants' motion for summary judgment to include a claim for breach of contract predicated on Defendants' failure to pay for the repair or replacement of the rear slope of Plaintiff's roof, Plaintiff has failed to present any admissible evidence that the rear slope of her roof was damaged by the tornado and/or required repair or replacement. Accordingly, no genuine issue of material fact exists concerning Defendants' obligation under the contract to pay for repair or replacement of the rear one-half of Plaintiff's roof.

Upon the Court's review of all of the evidence herein, the Court concludes that Defendants' action in not including an allowance for a general contractor's overhead and profit in the ACV payment was reasonable as a matter of law in view of the limited amount of repairs needed and the lack of coordination between the trades that was required to repair Plaintiff's property damage. It is undisputed that J & M Roofing repaired the roof and the siding on the chimney, Plaintiff's neighbor's stepson repaired Plaintiff's fence and Country Painter painted Plaintiff's home and fence. *See* Deposition of Plaintiff (Exhibit "D" to Defendants' Motion) at p. 67. The order in which the repairs to Plaintiff's home were done was simple and logical - the roofing and chimney encasement or siding replacement was first done by J & M Roofing and then the painting was done by Country Painter. *See* Deposition of Plaintiff (Exhibit "30" to Plaintiff's Response) at p. 70. At a minimum, a legitimate dispute existed as to whether the services of a general contractor would be necessary to coordinate the repairs of Plaintiff's property and hence as to whether an allowance for a general contractor's overhead and profit should have been included as part of the ACV payment to Plaintiff. *See generally Timberlake Construction Co. v. U.S. Fidelity and Guaranty Co.*, 71 F.3d 335, 343-44 (10th Cir. 1995). To the extent Plaintiff claims that Defendants' failure to pay Plaintiff an amount equal to a general contractor's overhead and profit amounts to bad faith because Defendants have admitted that such an amount is payable even if not actually incurred where the insured acts as his or her own general contractor, Defendants are entitled to summary judgment on Plaintiff's claim because there is no genuine

issue but that Defendants paid Plaintiff such amount as part of repair/replacement costs. To the extent Plaintiff's bad faith claim is predicated on Defendants' alleged failure to apprise Plaintiff that she might be entitled to payment for a general contractor's overhead and profit, Defendants are entitled to summary judgment as a matter of law because it is undisputed that Defendants twice informed Plaintiff of same in writing, that Plaintiff read that provision in the Property Claim Agreement, and that, in any event, Defendants paid Plaintiff an amount equal to the reasonable and customary overhead and profit charges of a general contractor, even though Plaintiff did not employ a general contractor and regardless of whether a general contractor's services were necessary.

With respect to Plaintiff's fraud claim, again because there is no genuine issue of material fact but that Defendants twice informed Plaintiff in writing that she might be entitled to payment for the reasonable and customary overhead and profit charges of a general contractor, Plaintiff read that provision and Defendants paid Plaintiff an amount equal to or more than the reasonable and customary general contractor overhead and profit charges, Defendants are entitled to summary judgment on Plaintiff's fraud claim. Plaintiff has failed to submit evidence showing that Defendants suppressed or failed to disclose to Plaintiff that she might be entitled to payment for the reasonable and customary general contractor's overhead and profit charges. Assuming, without deciding, that Defendants could be liable in fraud for failing to fully disclose the circumstances under which Plaintiff might be entitled to compensation in an amount equal to a general contractor's overhead and profit charges,

Plaintiff has failed to show that she has been damaged as a result of the alleged incomplete disclosure because it is undisputed that Plaintiff was paid an amount equal to a general contractor's overhead and profit in addition to the costs of repairing/replacing her property.

Because Plaintiff's bad faith and fraud claims fail as a matter of law, and Defendants are entitled to summary judgment on those claims, Plaintiff's claims for punitive damages necessarily also fail.

In accordance with the foregoing, Defendants' motion for summary judgment on Plaintiff's Complaint is GRANTED.

**IT IS SO ORDERED** this 5th day of November, 2002.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE